William Patrick GLEASON,.
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30298.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 29, 2010.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

On October 10, 2006, William P. Gleason ("Movant") pleaded guilty to two counts of the class D felony of criminal nonsupport. *See* section 568.040.[1] Pursuant to a negotiated plea agreement, Movant received two suspended, concurrent four-year sentences and was placed on a five-year term of probation. The State also agreed to dismiss several misdemeanor charges then pending against Movant.

Two years later, the court found after an evidentiary hearing that Movant had violated various conditions of his probation. The court revoked probation and executed Movant's previously suspended sentences. After arriving at the Department of Corrections, Movant filed a Rule 24.035[2] motion claiming that his plea had been involuntarily coerced because his attorney failed to "investigate facts that would have provided exculpatory evidence."

After holding an evidentiary hearing, the motion court denied relief. Movant now timely appeals that denial, claiming in a single point relied on that the motion court "clearly erred in denying [Movant]'s claim that his guilty plea was entered in an unknowing, involuntary, and unintelligent manner, and that his attorney was ineffective for failing to investigate whether [Movant] had made Western Union child support payments to his ex-wife[.]"

Because Movant had personal knowledge of the very information he alleges his trial counsel failed to discover, Movant's guilty plea was not entered unknowingly or involuntarily, and we affirm the motion court's denial of post-conviction relief.

## Background

### The Guilty Plea

At the hearing on Movant's request to enter a guilty plea, the prosecutor informed the trial court that the mother of Movant's two children reported that she had not received any child support from Movant during 2004. The records of the Division of Child Support Enforcement also showed that Movant had failed to make any of his court-ordered child support payments in 2004. Movant agreed that he was pleading guilty to the charges against him because what the prosecutor said was true. Movant confirmed that he had discussed the negotiated plea agreement with his attorney and understood its terms. The trial court accepted Movant's guilty plea and sentenced him as previously indicated.

Movant was represented by a different attorney at his probation revocation hearing in April 2008. At that hearing, Movant admitted that he had been arrested in January 2008 for driving while intoxicated, had failed to pay his child support, and had consumed alcohol in violation of a special condition of his probation. Movant confirmed that his attorneys did, or tried to do, everything he had asked them to do. He told the trial court that he had no concerns about the quality of his representation.

---

1. All statutory references are to RSMo 2000. At the time of Movant's offense and conviction, section 568.040.1 provided: "[A] parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child or stepchild who is not otherwise emancipated by operation of law."

2. All rule references are to Missouri Court Rules (2010).

### The Motion Hearing

At the December 2009 hearing on his Rule 24.035 motion, Movant told a different story. Movant testified that he "made payments directly to [his ex-wife] that were never brought up." But contrary to the claim set forth in his amended motion, Movant testified more than once at his hearing that he did not tell his trial attorney that he had made such payments or that Movant had receipts evidencing them.

Movant's trial attorney testified that he had recently changed offices and was not able to review Movant's file before the motion hearing. He testified that he had other clients with nonsupport cases and understood that payment of child support was at least a partial defense. He did not "recall anything specifically that [Movant] told [him] that he made any payments at all. And if [Movant] had, [he] would have looked into it to try to see if [they] could do anything to get rid of the charges." Trial counsel also testified:

> I would have asked him if he'd made any payments on his child support. And if he made me aware of it I would have looked into it. If they were just—if they were Western Union receipts, I think that's something he might have said, that's something I would need him to bring to my attention. I don't think there's any other way for us to find out about those other than for him to bring those to us.

The motion court denied Movant's request for relief, finding that Movant: 1) did not prove that his attorney "failed to exercise the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances[;]" and 2) did not prove that he was prejudiced by the acts or omissions of his attorney and, but for the attorney's error, would have gone to trial. The motion court found that "Movant had considerable experience in criminal cases, and the court does not believe that if he had receipts for child support payments, he would not have shown them to his attorney, nor would the attorney have failed to use the information."

### Analysis

■ Movant's point relied on states:

The motion court clearly erred in denying [Movant]'s claim that his guilty plea was entered in an unknowing, involuntary, and unintelligent manner, and that his attorney was ineffective for failing to investigate whether he had made Western Union child support payments to his ex-wife, because this violated [Movant]'s rights to due process of law and the effective assistance of counsel, guaranteed by the 6th and 14th Amendments to the U.S. Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, in that [Movant]'s trial attorney, [ ] testified inconsistently at the post-conviction hearing that he could recall very little about the case and would have looked into any claims by [Movant] that he had made child support payments, but he also testified that [Movant] "might have said" he had Western Union receipts, but it was [Movant]'s responsibility to produce the receipts, and since he did not do so, there was no other way for [trial counsel] to find out about the payments. The court's finding that [Movant] did not prove what information [trial counsel] failed to discover, that a reasonable investigation would have revealed it, or that it would have aided or improved his position was contrary to the hearing testimony.

■ "The motion court's findings are presumed correct." *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous."

Rule 24.035(k); *see also Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The findings and conclusions are considered clearly erroneous only if our review of the entire record leaves us with the "firm impression that a mistake has been made." *Moss*, 10 S.W.3d at 511. In conducting our review, we "defer to the credibility determinations of the motion court." *Hill v. State*, 301 S.W.3d 78, 84 (Mo.App. S.D. 2010).

■■■ It is true that a failure by defense counsel to investigate important evidence may render counsel's assistance ineffective. *Clay v. State*, 954 S.W.2d 344, 349 (Mo.App. E.D.1997). But when the "conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997).

Movant argues in his brief that "he could not remember whether he had told [trial counsel] about the Western Union receipts, but [trial counsel] remembered them. [Trial counsel] testified that [Movant] might have said that there were Western Union receipts, but said that it was [Movant]'s responsibility to bring him the receipts." The State counters that when [trial counsel]'s comment is viewed in context with his other testimony, "it becomes clear that [trial counsel] was referring to the prior portions of the evidentiary hearing." We agree.

Movant overlooks the fact that his counsel's testimony acknowledging a statement by Movant regarding Western Union receipts was made *after* he had listened to Movant's testimony at the post-conviction hearing. Immediately before referring to Movant's claim, the trial attorney testified that he "would have asked [Movant] if he'd made any payments on his child support. And if he made me aware of it I would have looked into it." This statement was consistent with his other testimony that if Movant had told him that he had made any payments at all, he would have looked into it to see if he could "do anything to get rid of the charges."

The assertion in Movant's brief that he did not remember whether he told his trial attorney about the Western Union receipts is clearly refuted by the following testimony from Movant at the motion hearing.

[motion counsel]: Okay. Now, did you ever—you said that you had made payments?

Movant: Yes.

[motion counsel]: But that you didn't discuss those payments with [trial counsel]?

Movant: Never brought it up.

[motion counsel]: Okay. Did you have—possess receipts for those payments?

Movant: I do.

[motion counsel]: Did you at the time?

Movant: Yes.

[motion counsel]: Did you ever discuss those receipts with [trial counsel]?

Movant: I don't believe I ever did.

Later, after first indicating a lack of memory, Movant again rejected an opportunity to confirm that he told his attorney about the receipts.

[motion counsel]: And did you make any effort to inform [trial counsel] at the time about those payments and the fact that you had receipts?

Movant: I can't remember. I don't think so.

■■■ Movant admitted at his hearing that he did not tell his attorney that he had made direct child support payments to his ex-wife via Western Union and kept the receipts; yet Movant claims trial counsel was ineffective for failing to investigate and uncover this information. The reasonableness of investigation depends significantly on the information provided by the

defendant, and trial counsel can reasonably rely on a defendant's statements (or lack thereof in a situation where he would be expected to speak) in determining what investigation to conduct and what defenses to pursue. *See Hufford v. State,* 201 S.W.3d 533, 539 (Mo.App. S.D.2006).

By failing to tell his attorney that he had made child support payments for which he was not getting credit, Movant deprived his counsel of any reason to attempt to determine whether Movant had actually made such payments. While we might imagine a scenario in which a defendant had knowledge of crucial information but did not disclose it because he was ignorant of its legal significance, that is not the case here. Any layperson charged with a willful failure to pay child support would understand that the actual payment of such support would, be a relevant defense.[3] Even if Movant had actually made child support payment in 2004 to the mother of his children via Western Union—a proposition the motion court explicitly rejected—Movant's guilty plea would not have been entered unknowingly or involuntarily because Movant already had firsthand knowledge of the information and its legal significance.

Our review of the record has not left us with a definite and firm impression that a mistake has been made. Movant's point is denied, and the motion court's decision to deny post-conviction relief is affirmed.

BARNEY, P.J., and LYNCH, J., Concur.

---

**3.** Movant also failed to allege that the receipts would have proved that Movant had met his child support obligations for 2004. *See Cariaga v. State,* 147 S.W.3d 122, 126 (Mo.App. S.D.2004) (for purposes of post-conviction motion, evidence of "withholdings for child support obligations which were substantially less than [the] court-ordered monthly child support payment" did not establish a viable defense of lack of knowledge).