Alok Ahuja, Judge
In 2010, Appellant Tausha Fields was found guilty of murder in the first degree and armed criminal action following a jury trial. We affirmed Fields' convictions on direct appeal in 2012.
Over four years later, Fields filed a motion seeking post-conviction relief. To justify the untimely filing of her motion, Fields alleged that, because she was experiencing difficulties with the prison mail system, her direct-appeal counsel offered to file her pro se post-conviction relief motion for her. She alleged that she forwarded her pro se motion to counsel for filing, but that the motion was not timely filed due to counsel's unexpected, debilitating medical issues.
The circuit court dismissed Fields' motion as untimely without conducting an evidentiary hearing. Fields appeals. Because we conclude that Fields' motion adequately alleged that "active third-party interference" prevented the timely filing of her pro se post-conviction relief motion, we reverse, and remand for further proceedings.
Factual Background
In 2010, Fields was convicted following a jury trial of first-degree murder and armed criminal action in the Circuit Court of Boone County. The court sentenced Fields to life without the possibility of parole for murder, and twenty years' imprisonment for armed criminal action. We affirmed Fields' convictions on direct appeal. State v. Morton , 384 S.W.3d 343 (Mo. App. W.D. 2012) (mem. ).[1] Our mandate issued on December 20, 2012.
*47 Under Supreme Court Rule 29.15(b), Fields' post-conviction motion was due 90 days after the issuance of our mandate, meaning that the deadline for filing her initial motion was March 20, 2013.
Fields filed a Motion to Vacate, Set Aside and Correct Judgment and Sentence in the Circuit Court of Boone County on January 4, 2017, contending that she received ineffective assistance of trial counsel in multiple respects. Besides asserting claims of ineffective assistance of counsel, the January 2017 Motion also sought to justify Fields' failure to file a timely Rule 29.15 motion in 2013. Fields alleged that, "[d]uring the 90 days leading up to the deadline for the filing of the 29.15 Motion," she was confined in administrative segregation at the Chillicothe Correctional Center. The Motion alleged that, while in administrative segregation, Fields "had been experiencing problems with regular mail," although she "did not experience problems with her legal mail, sent to and received from her [direct-appeal] counsel." The Motion alleged that, "[a]s a result of [Fields'] difficulties with mail getting to its destination, prior to February 6, 2013, [Fields'] [direct-appeal] counsel agreed to file [Fields'] pro se 29.15 Motion prepared by [Fields] prior to the March 20, 2013 deadline." The Motion alleged that Fields mailed her pro se motion to her direct-appeal counsel prior to the March 20, 2013 deadline.
Fields' Motion alleged that her direct-appeal counsel, who is quadriplegic, was scheduled for surgery on February 6, 2013. The Motion alleged that Fields' direct-appeal counsel "had no reason to believe that he would have additional health issues after the February 6, 2013 surgery leading to an extended medical absence from his office." The Motion alleged, however, that after counsel's February 6, 2013 surgery, "counsel unexpectedly was bed ridden for several weeks." The Motion also alleged that, "[a]s a result of [Fields'] [direct-appeal] counsel's physical incapacitation from his February 6, 2013 [surgery], he was unable to timely file [the] pro se 29.15 Motion prepared by [Fields] prior to the March 20, 2013 deadline." The Motion asserted that, because she was in administrative segregation, Fields did not have telephone access to call counsel, and therefore was unaware of the status of her pro se motion until after the March 20, 2013 deadline had passed.[2]
Along with her Motion, Fields filed a Memorandum in Support of the Motion. In the Memorandum, Fields argued that her failure to timely file a pro se postconviction relief motion was excused, because her case involved the "rare circumstance" in which " 'an inmate writes his initial post-conviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time, [but] the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely.' " (Quoting Gunn v. State , 484 S.W.3d 106, 109 (Mo. App. W.D. 2015), in turn quoting Price v. State , 422 S.W.3d 292, 302 (Mo. banc 2014).)
A week after the filing of Fields' Motion, and without receiving a response from the State, the circuit court entered an order stating that Fields' Motion was "dismissed without prejudice as not being timely filed."
Fields appeals.
*48 Standard of Review
Appellate review of a motion court's dismissal of a postconviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous. A motion court's findings and conclusions are clearly erroneous if this Court "is left with the definite and firm impression that a mistake has been made" after a review of the entire record.
Propst v. State , 535 S.W.3d 733 (Mo. banc 2017) (citations omitted); see also Rule 29.15(k).
Analysis[3]
Under Rule 29.15(b), where an offender is convicted of a felony after trial and appeals his conviction, a post-conviction motion must be filed within 90 days after the date on which this Court issues its mandate in the direct appeal. Rule 29.15(b) expressly provides that "[f]ailure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15 and a complete waiver of any claim that could be raised in a motion filed pursuant to this Rule 29.15."
The Missouri Supreme Court has held that a post-conviction relief movant has the burden of pleading, and proving, either that movant's motion was timely filed, or that the untimeliness of the motion is otherwise excused.
In a motion filed pursuant to Rule 29.15, the movant must allege facts showing a basis for relief to entitle the movant to an evidentiary hearing. The movant also must allege facts establishing that the motion is timely filed. The movant then must prove his allegations.... The movant must allege facts showing he timely filed his motion and meet his burden of proof by either: (1) timely filing the original pro se motion so that the time stamp on the file reflects that it is within the time limits proscribed in the Rule; (2) alleging and proving by a preponderance of the evidence in his motion that he falls within a recognized exception to the time limits; or (3) alleging and proving by a preponderance of the evidence in his amended motion that the court misfiled the motion.
Dorris v. State , 360 S.W.3d 260, 267 (Mo. banc 2012) (citations omitted).
In this case, Fields concedes that she failed to file a timely post-conviction relief motion. She contends, however, that the circumstances alleged in her motion invoke a judicially recognized exception to Rule 29.15(b)'s time limits: where the timely filing of the motion is prevented by the "active interference" of a third party. Under the "active interference" exception,
where an inmate writes his initial post-conviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time, a motion court may excuse the inmate's tardiness when the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely.
*49 Price v. State , 422 S.W.3d 292, 302 (Mo. banc 2014) ; accord , Henson v. State , 518 S.W.3d 828, 835 (Mo. App. S.D. 2017). This "active interference" exception "arises out of the practical reality that an inmate cannot comply with Rule 29.15 without relying on a third party to some extent." Price , 422 S.W.3d at 302.
The Missouri Supreme Court applied the "active interference" exception in a similar situation in McFadden v. State , 256 S.W.3d 103 (Mo. banc 2008). As the Court explained in Price , 422 S.W.3d at 303-04, in McFadden the inmate completed his pro se motion prior to the filing deadline, and mailed it to his trial counsel, who had told the inmate to do so. "The inmate did as he was instructed and, even though the public defender received the inmate's initial motion two weeks before the Rule 29.15(b) deadline, she failed to file the inmate's motion on time." Price , 422 S.W.3d at 304 (citing McFadden , 256 S.W.3d at 109 ). In these circumstances,
McFadden finds that the inmate "did all he could to express an intent to seek relief under Rule 29.15" and would have filed his motion on time but for the active interference of a third party .... [256 S.W.3d] at 108, 109.
The record shows Mr. McFadden timely prepared his motion for post-conviction relief and provided this motion to his counsel well before it was due to the court. Counsel, however, actively interfered with the timely filing and, despite her receipt of Mr. McFadden's motion for postconviction relief on September 28, 2006, she did not file his motion until October 12, 2006, one day after the filing date.
Id. On the basis of these "unique circumstances," the Court held that the inmate was entitled to proceed notwithstanding his tardy filing. Id.
Price , 422 S.W.3d at 304 (emphasis added by Price ; footnote omitted). Price explained that, although the third person who failed to timely file the motion in McFadden was the inmate's attorney, "the central issue in McFadden is not the existence of an attorney-client relationship but the fact that, even though it was the inmate's attorney whose active interference caused the inmate's motion to be filed late, the inmate relied on her only to deliver the motion he prepared." Id.[4]
Relying on McFadden , we reversed a circuit court's dismissal of an inmate's motion to file an untimely post-conviction relief motion in Williams v. State , 415 S.W.3d 764 (Mo. App. W.D. 2013). In Williams , the inmate alleged that he timely prepared an initial post-conviction relief motion, forwarded the motion to his direct-appeal counsel, and that counsel assured him "that 'he would file [the motion] and that [the inmate] shouldn't worry about it because it would be on time.' " Id. at 766.[5] Similarly, the Eastern District observed that an inmate "had adequately alleged in his 'motion to reopen' that privately-retained post-conviction counsel actively interfered with [the inmate]'s ability to timely file his original Rule 29.15 motion,"
*50 where the inmate claimed "that counsel told [the inmate] to mail his Form 40 to counsel, who would take care of filing it with the court." Lucious v. State , 460 S.W.3d 35, 37, 38 (Mo. App. E.D. 2015).
Here, Fields has alleged sufficient facts to invoke the "active interference" exception, since the allegations of her motion-if believed-indicate that she took "every step [she] reasonably [could] within the limitations of [her] confinement to see that the motion [was] filed on time." Price , 422 S.W.3d at 302. As in McFadden , Williams , and Lucious , Fields alleged that she prepared her initial motion, and mailed it to her direct-appeal counsel prior to the filing deadline. As in those cases, Fields alleged that her direct-appeal counsel undertook to file the initial motion on her behalf, and that she reasonably relied on counsel's assurances. She also alleged that her motion was not filed by the March 20, 2013 deadline solely due to circumstances beyond her control: the fact that counsel experienced unexpected medical complications following a February 6, 2013 surgery, was physically incapacitated as a result, and was rendered incapable of timely filing Fields' motion.
The States argues that, even if Fields adequately alleged that active third-party interference prevented her from filing her motion before the March 20, 2013 deadline, her claim is nonetheless deficient because "she failed to take reasonable steps thereafter to file her motion within a reasonable period of time." Fields' diligence, or lack of diligence, following the passage of the March 2013 deadline cannot defeat her "active interference" claim. In Price the Missouri Supreme Court explained that the "complete waiver" dictated by Rule 29.15(b) takes effect the moment an inmate fails to comply with the Rule's filing deadline; the degree of the inmate's tardiness is irrelevant.
The inmate in Bullard [v. State , 853 S.W.2d 921 (Mo. banc 1993),] did not file his initial motion until 10 months after the deadline, while Price's initial motion missed the deadline by more than four years. The length of the inmate's tardiness is irrelevant, however, because the waiver provisions in Rule 29.15(b) are triggered when the inmate's initial motion is tardy to any degree. Nothing in the rule suggests that these waivers apply to some tardy filings but not others.
422 S.W.3d at 301 n.4 (emphasis added). Under Rule 29.15(b), Fields "completely waive[d]" all of her post-conviction claims the moment her direct-appeal counsel failed to file her motion by the March 20, 2013 deadline. Counsel's "active interference" with Fields' effort to seek post-conviction relief was complete at that moment; nothing Fields did after the deadline could have cured the "complete waiver" which resulted from counsel's inaction.
The State's assertion that Fields' "active interference" claim fails because of her purported lack of diligence after March 2013 finds no support in the case law. In Williams v. State , 415 S.W.3d 764 (Mo. App. W.D. 2013), an inmate filed a motion for leave to file an untimely Rule 29.15 motion more than 15 years after the inmate's initial motion had been dismissed as untimely. The inmate claimed (like Fields) that the initial motion was untimely due to the "active interference" of his direct-appeal counsel. We reversed the circuit court's dismissal of the inmate's motion for leave to file an untimely Rule 29.15 motion, and remanded for further proceedings on the inmate's allegations of "active interference." Williams makes no suggestion that the inmate's delay of more than 15 years in seeking relief could defeat his claim. Similarly, courts have remanded claims of "abandonment" by counsel for further proceedings, *51 even though the inmate waited more than 10 years before claiming "abandonment." See , e.g. , Dudley v. State , 254 S.W.3d 109, 111 (Mo. App. W.D. 2008) (offender claimed abandonment "fourteen years after the original judgment"); Daugherty v. State , 116 S.W.3d 616 (Mo. App. E.D. 2003) (remanded for abandonment inquiry after 12-year delay).[6]
Conclusion
We reverse the circuit court's order dismissing Fields' post-conviction relief motion as untimely. Fields' motion adequately alleged that "active third-party interference" prevented the timely filing of her pro se post-conviction relief motion. The case is remanded to the circuit court for further proceedings consistent with this opinion.
All concur.

Fields was referred to as "Tausha Lee Morton" during the underlying criminal proceedings.

Fields' Motion also included allegations concerning the efforts she made to file her post-conviction relief motion after the passage of the March 20, 2013 deadline. As explained in the Analysis which follows, however, the reasons for the post-March 2013 delay in the filing of Fields' Motion are not relevant to our disposition of this appeal.

The circuit court's order states that the court dismissed Fields' Motion "without prejudice." Dismissals without prejudice are generally considered non-final and therefore non-appealable. "However, a party can appeal from a dismissal without prejudice if the dismissal has the practical effect of terminating the action." Adem v. Des Peres Hosp., Inc. , 515 S.W.3d 810, 814 (Mo. App. E.D. 2017) (citation and internal quotation marks omitted); accord , Brown v. Brown-Thill , 437 S.W.3d 344, 348 n.1 (Mo. App. W.D. 2014). By holding that Fields' Motion was untimely, the circuit court denied Fields any opportunity to seek post-conviction relief under Rule 29.15; its order is therefore final and appealable.

Price itself holds that an inmate's late filing of an initial motion is not excused where the inmate retains counsel to prepare and file the initial motion, but counsel files the motion late based on counsel's mistaken understanding of the filing deadline. 422 S.W.3d at 300-01 ; see also Propst v. State , 535 S.W.3d 733 (Mo. banc 2017) ("active interference" exception inapplicable where inmate relies on public defender to prepare initial motion on inmate's behalf).

Williams discussed the issue of "active interference" as one of "abandonment" by counsel. Price clarifies, however, that this excuse for the late filing of an initial postconviction relief motion is not a species of "abandonment." 422 S.W.3d at 303-07.

The State also argues that Fields' motion is deficient because it fails to specifically allege that she provided counsel with her initial motion sufficiently in advance of the filing deadline to permit counsel to timely file it. We disagree. Fields' motion alleges that she sent her initial motion to counsel prior to the March 20, 2013 deadline, but that the motion was not timely filed due to counsel's unexpected medical condition. The motion sufficiently alleges that, but for counsel's incapacitation, Fields' motion would have been timely filed.