

# In the
# Missouri Court of Appeals
## Western District

UMAR MUHAMMAD,

                Appellant,

v.

STATE OF MISSOURI,

                Respondent.

WD81319

OPINION FILED:

July 16, 2019

Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Bryan Round, Judge

Before Division Two:
Thomas N. Chapman, P.J., Mark D. Pfeiffer, and Cynthia L. Martin, JJ.

Umar Muhammad[1] appeals from the judgment of the Jackson County Circuit Court

denying his amended Rule 29.15 motion for post-conviction relief. After an evidentiary hearing,

the motion court found that, due to untimely filing of his initial 29.15(b) motion, Muhammad had

waived his right to proceed under Rule 29.15; and also found that, were his claims not barred,

they nonetheless failed on the merits. On appeal, Muhammad argues that the untimely filing of

his initial 29.15(b) motion should have been excused due to third party interference. He further

maintains that the motion court erred in denying his claims that his trial counsel was ineffective

---

[1] Unless otherwise noted, after our initial reference to an individual, we will refer to them by their last names only. No disrespect is intended.

for failing to fully develop a defense that Muhammad was misidentified as the shooter and for failing to argue that Muhammad acted in self-defense. We affirm.

## Statement of Facts

Muhammad was tried before a jury in the Jackson County Circuit Court on four separate charges alleging that, on May 19, 2011, he shot and killed Mohamed Hussein, and that he shot at, but did not injure, Anwar Ali, at a park in Kansas City, Missouri. The jury found Muhammad guilty and the trial court imposed concurrent sentences of 30 years for second degree murder, 15 years for assault in the first degree, and five years on each of the two armed criminal action charges. As directed by Rule 29.07[2], after sentencing, the trial court confirmed with Muhammad's trial counsel that Muhammad had been advised of the rights afforded him under Rule 29.15.[3] A signed acknowledgement of defendant's rights under Rule 29.15 was filed on October, 17, 2013.

---

[2] We utilize the Missouri Rules of Civil Procedure as they were effective on January 1st, 2013. Rule 29.07(b)(3) states, in pertinent part:

> After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and the right of a defendant who is unable to pay the cost of the appeal to apply for leave to appeal in forma pauperis.

[3] The following colloquy took place at the sentencing hearing:

> THE COURT: [Trial Counsel], I assume that you have advised your client of his right to appeal?
> TRIAL COUNSEL: I have, Your Honor.
> THE COURT: And I understand that you have a motion to file with regard to that.
> TRIAL COUNSEL: Yes, I am filing with the Court a Motion To Appeal as a Poor Person as well as a proposed order as such.
> THE COURT: Okay, I will sign that. Okay and have you also advised Mr. Muhammad of his rights under Rule 29.15?
> TRIAL COUNSEL: I have, yes.
> THE COURT: All right, Mr. Muhammad, you have been advised of your rights under 29.15 and the Court finds that there is no probable cause that your counsel was ineffective and you can raise the issues that have been raised in the Motion For A New Trial on appeal.

On direct appeal, Muhammad was initially represented by appointed counsel. On September 22, 2014, appointed counsel moved to withdraw; and on the next day Muhammad's private counsel (referred to herein as "Attorney J.") filed his entry of appearance, which stated: "Because the appellant is no longer indigent, he consents to the public defender's forthcoming motion for leave to withdraw."[4]

This Court affirmed Muhammad's convictions in his direct appeal. *State v. Muhammad*, 478 S.W.3d 468 (Mo. App. W.D. 2015). After Muhammad's request for transfer was denied, our mandate was issued on January 27, 2016. Pursuant to Rule 30.24(b), a copy of the mandate was sent to Department of Corrections; and was also mailed to the Jackson County Circuit Clerk, to counsel for the State, and to Attorney J.

On July 18, 2016, Muhammad filed his *pro se* Rule 29.15 motion in the instant action, 174 days after the issuance of our mandate in his direct appeal. The motion court appointed counsel, an amended motion was filed, and the State filed its response.

In his testimony at the motion hearing, Muhammad indicated that Attorney J. told him that he had up to 180 days after the issuance of the mandate to file his initial motion; that Attorney J. said he would come to the prison to assist Muhammad in filing the motion; and that he relied on Attorney J.'s advice in determining when to file his initial 29.15(b) motion. At the motion hearing, Attorney J. confirmed that he had incorrectly advised Muhammad that he had 180 days from the issuance of the mandate to file his Form 40 post-conviction motion. Attorney

---

[4] Pursuant to Muhammad's motion, we transferred the record on appeal from his direct appeal in *State v. Umar Muhammad*, WD76966. Appointed counsel's Motion to Withdraw and Attorney J.'s Entry of Appearance are included in the direct appeal file. Furthermore, we are permitted to "take judicial notice of [our] own records and may take judicial notice of the records of other cases when justice so requires." *Vogt v. Emmons,* 158 S.W.3d 243, 247 (Mo. App. E.D 2005).

3

J. testified that he told Muhammad that he would "help in any way [he could]" to get his initial 29.15(b) motion filed; and "even told [Muhammad] that [he] would make arrangements to meet with him at the prison to do so."

The motion court issued Findings of Fact, Conclusions of Law, and a Judgment denying relief. This timely appeal followed.

## Standard of Review

Our review of a motion court's denial of post-conviction relief is limited to establishing whether the findings and conclusions of law are clearly erroneous. *Fields v. State*, 541 S.W.3d 45, 48 (Mo. App. W.D. 2018). "A motion court's findings and conclusions are clearly erroneous if this Court 'is left with the definite and firm impression that a mistake has been made' after a review of the entire record." *Id*. (quoting *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017)).

## Analysis

In its judgment, the motion court held that "[t]he movant's motion was untimely filed and thus is a complete waiver of his right to proceed." In his first point on appeal, Muhammad claims that the motion court erred in this finding because his failure to timely file his initial Rule 29.15 motion should have been excused due to the active interference of Attorney J.[5]

Rule 29.15(b) indicates that, where there has been a direct appeal, "the [Rule 29.15] motion shall be filed within 90 days after the date the mandate of the appellate court issues affirming such judgment or sentence." Muhammad filed his initial motion at least 174 days after

---

[5] Because our determination of this point is dispositive of Muhammad's appeal we do not discuss his remaining claims of error.

4

we issued our mandate in his direct appeal – at least 84 days after the 90-day deadline set out

under Rule 29.15(b). Rule 29.15(b) further provides that "[f]ailure to file a motion within the

time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under

this Rule 29.15 and a complete waiver of any claim that could be raised in a motion filed

pursuant to this Rule 29.15."

Individuals convicted of state crimes have "no federal constitutional right to a state post-

conviction proceeding[.]" *Price v. State*, 422 S.W.3d 292, 296 (Mo. banc 2014) (quoting *Smith v.

State,* 887 S.W.2d 601, 602 (Mo. banc 1994)). States provide post-conviction remedies at their

discretion. *Id*. In Missouri, Rule 29.15[6] is the exclusive remedy for an inmate who seeks post-

conviction relief after a trial. *Id*. Under that scheme, the movant is solely responsible for filing

an initial motion asserting any claims of error within the time set forth in the rule. *Id*. at 297; *see

also* Rule 29.15(b), (d). "[C]ounsel will be appointed for all indigent inmates if, but only after,

the inmate timely files his initial motion." *Price*, 422 S.W.3d at 297; Rule 29.15(e). Because

there is no constitutional right to post-conviction relief, claims of ineffective assistance of post-

conviction counsel are only cognizable where a court finds that the "'complete absence of

performance by appointed counsel is tantamount to a failure of the motion court to appoint

counsel under Rule 29.15(e)' in the first instance." *Price*, 422 S.W.3d at 298 (quoting *Luleff v.

---

[6] Rule 29.15 (a) states, in pertinent part:

> A person convicted of a felony after trial claiming that the conviction or sentence imposed violates
> the constitution and laws of this state or the constitution of the United States, including claims of
> ineffective assistance of trial and appellate counsel, that the court imposing the sentence was
> without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence
> authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule
> 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in
> the sentencing court for the claims enumerated.

*State*, 807 S.W.2d 495, 497 (Mo. banc 1991)).  Since a movant is only entitled to counsel upon the initial filing of their motion, until this has occurred, claims that post-conviction counsel is incompetent or not diligent are "categorically unreviewable."  *Id*. at 297.

When filing that initial motion, Missouri Courts have been clear that compliance with the deadlines set forth in Rule 29.15(b) are mandatory.  *Watson v. State*, 520 S.W.3d 423, 434 (Mo. banc 2017) ("The post-conviction filing deadlines are mandatory and failure to adhere to these deadlines imposes a harsh consequence—the complete waiver of the right to seek post-conviction relief and a complete waiver regarding all claims that could be raised in a Rule 29.15 motion.").

However, late filing may be excused when a movant has shown that "the timely filing of the motion is prevented by the 'active interference' of a third party." *Fields,* 541 S.W.3d at 48. In *Fields* we further indicated:

> [W]here an inmate writes his initial post-conviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time, a motion court may excuse the inmate's tardiness when the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely.

*Id*.  (quoting *Price*, 422 S.W.3d at 302).

Courts have applied this exception in a number of situations where an inmate has shown that they completed the motion and gave it to their appointed counsel prior to the expiration of the deadline but, for a variety of reasons, appointed counsel failed to timely file the prepared motion.  *Id*. at 49.  Courts have also applied the exception when another, external factor, intervened to prevent the timely filing.  *Id*. at 49-50.

Muhammad does not contend that he timely prepared his initial 29.15(b) motion. Instead, he asserts that his appellate counsel actively interfered by giving him incorrect advice regarding the time to file his motion. In particular, Muhammad contends that, if counsel had not provided erroneous information regarding the filing deadline, he would have timely prepared and filed his Rule 29.15 motion. Muhammad fails to address (or even acknowledge) that he hired Attorney J.; and entirely fails to address the significance of that choice.

The circumstances leading up to the Muhammad's late filing of his initial 29.15(b) motion are very similar to the circumstances in *Price*, *supra*. Muhammad and Attorney J. testified that Attorney J. advised Muhammad regarding the time to file his motion; that Attorney J. had agreed to assist in the preparation of that motion; and that Attorney J. would then make certain that it was timely filed. Both agree that Attorney J. incorrectly advised Muhammad regarding the filing deadline, and, due to that erroneous advice, the motion was not timely filed. In *Price*, as in the instant case, the movant was convicted in a jury trial; hired private counsel to prosecute his direct appeal; and relied on that same private counsel to assist in the timely filing of his post-conviction motion. *Price*, 422 S.W.3d at 302. Price, like Muhammad, was erroneously advised that he had 180 days in which to file his initial 29.15(b) motion; and, relying on that advice and assistance, failed to timely file his initial motion. *Id.* at 295.

Though Muhammad does not explicitly claim abandonment by (or ineffective assistance of) post-conviction counsel, his arguments are difficult to distinguish from those claims. Like the movant in *Price*, Muhammad claims that his privately retained direct appeal counsel erroneously advised him regarding the deadline to file his initial claim; that same retained counsel agreed to assist him in its preparation; that counsel failed in his duties; and that counsel's

7

failings should excuse his untimely filing.[7]  In *Price* the Missouri Supreme Court made it clear

that, unlike the untimely filing of an amended 29.15(g) motion, the failure to timely file an initial

29.15(b) motion cannot be excused due to abandonment of counsel.[8]  *Id.* at 301.

Like the movant in *Price*, Muhammad also claims that private counsel's bad advice and

failure to act constituted active third party interference, excusing his failure to timely file his

initial 29.15(b) motion.  In rejecting the claim of third party interference, the *Price* court first

noted that when an inmate prepares the motion and does all he can to ensure timely filing, "any

tardiness that results solely from the active interference of a third party beyond the inmate's

control may be excused and the waivers imposed by Rule 29.15(b) not enforced."  *Id*.  The court

---

[7] There is nothing in the record that substantively distinguishes the facts in this case from *Price*.  Although Muhammad ultimately filed the motion himself, the facts reflect that (like Price) he relied on his privately hired direct appeal counsel for notice of when to file and also delayed filing in anticipation of assistance from his direct appeal counsel.

[8] In declining to excuse the filing of an initial 29.15(b) motion, the *Price* court indicated:

> The Court's wariness in *Bullard* of ineffective assistance claims masquerading as abandonment claims is justified.  "Claims of abandonment [must be] reviewed carefully to ensure that the true claim is abandonment and not a substitute for an impermissible claim of ineffective assistance of post-conviction counsel." *Taylor v. State*, 254 S.W.3d 856, 858 (Mo. banc 2008). *Bullard* notes that, when properly confined to the filing of amended motions by appointed counsel, the abandonment doctrine survives such scrutiny because it seeks only to enforce Rule 29.15(e), and does not purport to supervise the quality of representation that an inmate receives—but has no constitutional right to receive—during post-conviction proceedings.

> This line is crossed, however, when an inmate claims: (1) that his counsel failed to understand properly the deadlines for initial motions under Rule 29.15(b); and (2) that counsel's failure prejudiced the inmate by causing him to waive his right to proceed under Rule 29.15 and to waive all claims that he might have pursued in a timely motion.  *Bullard* strips away the mask of "abandonment" from such claims, revealing them to be the ordinary ineffective assistance claims they are. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance claims must allege that the attorney failed to exercise that level of skill and diligence that a reasonably competent attorney would exercise in a similar situation and that this failure prejudiced the defendant).  For this reason, too, *Bullard* is correct in rejecting all efforts to excuse a tardy initial motion on the basis of counsel's failure to draft and file the inmate's motion on time.

422 S.W.3d at 300.

went on to note that, while the initial motion doesn't require legal expertise, the excuse (for third party interference) exists because the unique circumstances of an inmate's situation means that they have to rely on a third party to some extent to see that their motion gets filed. *Id*. at 302 ("[I]nmates—unlike nearly every other category of civil litigants—cannot initiate post-conviction proceedings without relying on the assistance of one or more third parties to take the motion from the inmate and deliver it to the circuit clerk for filing."). Because of this "practical reality" when "an inmate writes his initial post-conviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time" an untimely filing may be excused if the active interference of a third party thwarted the inmate's efforts. *Id*. In finding that the exemption did not apply in Price's case, the court found it determinative that, as here, Price had relied upon retained counsel. *Id*.

> Price is entitled to retain counsel….but, by doing so, he took the same risk that every other civil litigant takes when retaining counsel, i.e., he chose to substitute counsel's performance for his own and bound himself to the former as though it were the latter. This rule is as old as—and even older than—this Court:

>> The omission of the attorney spoken to in the cause to plead within the time prescribed by law, cannot place the application to set aside the judgment by default upon more favorable grounds than if the omission had been on the part of the defendant himself. The attorney is the agent of the party employing him, and in the court stands in his stead, and any act of the attorney must from necessity be considered as the act of his client, and obligatory on the client. This principle is so well understood and has been so long acted upon as to render it almost useless to refer to it—a different principle could not be tolerated by the courts without immediately leading to endless confusion and difficulty in the administration of justice….

> [T]he record in this case clearly suggests a gross breach of counsel's duties to Price. Even assuming such a breach, however, the courts were not responsible for this breach and have no obligation to remedy it.

9

*Id*. at 302-03 (quoting *Kerby v. Chadwell*, 10 Mo. 392, 393–94 (1847)).

As the movant, Muhammad bore the burden of "alleging and proving by a preponderance of the evidence in his motion that he [fell] within a recognized exception to the time limits." *Wadel v. State*, 524 S.W.3d 575, 577 (Mo. App. W.D. 2017) (quoting *Dorris v. State*, 360 S.W.3d 260, 267 (Mo. banc 2012)). Like the movant in *Price*, Muhammad failed to present evidence that a third party interfered with his timely filing of his 29.15(b) motion. He cannot claim third party interference of an attorney he himself hired and chose to rely upon, as that attorney was both his agent and counsel. [9] Nor can he mask claims of ineffective assistance of (or abandonment by) that counsel as third party interference. [10]

Muhammad's reliance on *Watson, supra,* is entirely misplaced. In *Watson*, the trial court inaccurately related the deadlines to a convicted defendant in the 29.07 colloquy. *Id*. at

---

[9] Muhammad attempts to distinguish *Price* by maintaining that Attorney J. had a conflict of interest and, therefore, could not have been Muhammad's counsel and agent. However, there is no distinction (at least none of record) that materially distinguishes the relationship between *Price* and counsel, and Muhammad and his counsel. In this matter, as in *Price*, privately retained direct appeal counsel provided erroneous advice regarding the time to file the initial 29.15(b) motion. *Price* did not find that this purported conflict of interest necessarily negated counsel or agency. In support of this argument, Muhammad cites to *Hutton v. State*, 345 S.W.3d 373 (Mo. App. W.D. 2011). In considering an issue not actually preserved for appeal (dicta), *Hutton, supra,* notes that, because a 29.15 motion can raise claims of ineffective assistance of direct appeal counsel, the appointment of direct appeal counsel as post-conviction counsel to file an amended 29.15(g) motion can represent a conflict of interest and *may* be a basis for abandonment. *Hutton*, 345 S.W.3d at 376. *Hutton* goes on to note that this is less clear in instances where private counsel has been hired, and where any purported conflict can be waived. *Hutton*, 345 S.W.3d at 377. In this matter we have no record before us to note whether counsel had a conflict, whether that conflict (if any) was waived, and whether any such conflict prejudiced Muhammad. Muhammad also speculates that by letting the deadline lapse, Attorney J. avoided the possibility that Muhammad would raise a claim that his representation on the direct appeal had been ineffective. There is nothing in the record to suggest that Muhammad had any issues with Attorney J.'s efforts on direct appeal; and no such claims were raised by appointed post-conviction counsel in Muhammad's amended 29.15(g) motion. Attorney J.'s forthright admission at the evidentiary motion hearing suggests that, quite to the contrary, he simply erred, and did not seek to excuse or conceal his error.

[10] *See also Propst v. State,* 535 S.W.3d 733, 737 (Mo. banc 2017) ("The relevant issue is not whether a private counsel or a public defender is representing a movant but rather whether the movant's efforts to effectuate a timely filing were frustrated by an intervening party.") (citing *Price*, 422 S.W.3d at 304-05). As in *Propst*, "the active interference exception does not apply in this case because [Muhammad] did not prepare the motion or take any steps to attempt to file it on his own [prior to the 90-day deadline]." 535 S.W.3d at 737.

434.  The Missouri Supreme Court excused the movant's untimely filing of his initial 29.15(b) motion "because the circuit court misinformed him about the appropriate deadlines to file his motion during his sentencing colloquy and he was entitled to rely upon this misinformation when determining the filing deadline." *Id*.  In the present case, there is no evidence that the trial court improperly advised Muhammad.  To the contrary, it is clear that Muhammad was informed of the deadline for filing his initial 29.15(b) motion.  Upon sentencing, Muhammad filed his signed "Defendant's Acknowledgment of Rights Pursuant to Supreme Court Criminal Rule 29.15" which stated, in pertinent part:

> You must understand any motion to vacate, set aside, or correct the judgment or sentence **must be filed** with the Jackson County Circuit Court:
> (1) Within Ninety (90) days after the date the mandate of the appellate court is issued if an appeal of the judgment was taken.

Muhammad nevertheless maintains that the admonition in Criminal Procedure Form 40[11] is an inaccurate statement of the law that provides a "stumbling block" to movants, and that this purported interference (presumably by the Supreme Court when it promulgated Form 40) would excuse his late filing.  The Form 40 admonition indicates: "The movant is required to include in this motion every claim known to him for vacating, setting aside or correcting the conviction and sentence or it will be waived or abandoned.  Be sure to include every claim."  Muhammad claims that this misstates the law because Missouri Courts have found the initial brief described in Rule 29.15(b) to be "relatively informal" and that a movant meets the requirements of the rule if it

---

[11] Rule 29.15(b) states, in relevant part, that: "A person seeking relief pursuant to this Rule 29.15 shall file a motion to vacate, set aside or correct the judgment or sentence substantially in the form of Criminal Procedure Form No. 40."  Form 40 was approved by the Missouri Supreme Court in 1987 and became effective on January 1, 1988, when Rule 27.26 was abolished and replaced by Rule 29.15.  The current version of Form 40, as amended, became effective on January 1, 2008.

provides notice that the movant is seeking relief under Rule 29.15. *Bullard v. State*, 853 S.W.2d 921, 922-23 (Mo. banc 1993). We need not address whether the admonition in the Form 40 is an accurate statement of the law, because the record is bereft of any testimony or other evidence to suggest that this admonition was even considered by Muhammad in determining *when* to file his initial 29.15(b) motion.[12]

The trial court did not clearly err in its determination that Muhammad's failure to timely file his initial 29.15(b) motion resulted in a complete waiver of his rights under Rule 29.15.[13] Point I is denied. Because our disposition of Point I is dispositive of Muhammad's appeal, we need not address his remaining points on appeal.

## Conclusion

The judgment of the motion court is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Presiding Judge

All concur.

---

[12] "The Missouri Constitution vests this Court with authority to establish rules relating to practice, procedure and pleading for all courts. Mo. Const. art. V, Sec. 5. 'When properly adopted, the rules of court are binding on courts, litigants, and counsel, and it is the court's duty to enforce them.'" *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) (quoting *Sitelines, LLC v. Pentstar Corp.,* 213 S.W.3d 703, 707 (Mo. App. E.D. 2007). We do note, *ex gratia,* that the admonition in Form 40 cited by Muhammad directly tracks the content requirements of the initial 29.15(b) motion set out in Rule 29.15(d). Rule 29.15(d) and the corresponding Form 40 admonition do not require the initial motion to include the legal basis for every possible claim; but instead simply require and direct the movant to state "every claim *known to him* for vacating, setting aside or correcting the conviction and sentence…." Criminal Procedure Form No. 40 (emphasis added). *Bullard* indicated that, because the initial motion may be informal, counsel is not necessary, and the lack of counsel does not excuse late filing. 853 S.W.2d at 922-23. The informality of the initial motion does not excuse the requirement that the movant include every claim "known to him." Rule 29.15(d).

[13] In its judgment the motion court incorrectly concluded that Muhammad filed his post-conviction motion 196 days after issuance of the mandate; whereas it was actually filed 174 days after issuance of the mandate. This miscalculation is not material to the outcome and the motion court's correct conclusion that Muhammad's initial 29.15(g) motion was not timely filed. The motion was filed more than 90 days after the mandate was issued and, therefore, resulted in a complete waiver of Muhammad's rights under Rule 29.15. "[We] will affirm on any ground that supports the circuit court's judgment, regardless of the grounds on which the circuit court relied." *Stanley v. State*, 420 S.W.3d 532, 543 n.9 (Mo. banc 2014).